### State v. Xie
*[Cite as 5 AOA 254]*

*Case No. 89AP-1312*
*Franklin County, (10th)*
*Decided July 31, 1990*

*Michael Miller, Prosecuting Attorney, George Ellis and James V. Canepa, for Appellee.*

*James Kura, Franklin County Public Defender, and David Kentner; Max Kravitz, for Appellant.*

WHITESIDE, J.

Defendant-appellant, Hanwen Xie, appeals a judgment of the Franklin County Court of Common Pleas denying defendant's motion to withdraw his guilty plea and raises the following assignments of error:

"I. The advice given appellant by his attorneys regarding his parole eligibility was so incorrect as to constitute ineffective assistance of counsel.

"II. Appellant's guilty plea was unintelligent and involuntary due to appellant's reliance on his attorneys' erroneous information concerning parole eligibility and due to improper pressure by one of his attorneys to plead guilty.

"III. The trial court abused its discretion when it refused to allow appellant to withdraw his guilty plea prior to sentencing."

Defendant was indicted on one count of aggravated murder with a firearm specification, to which he entered a plea of not guilty. The case was set for trial and, on the second day of voir dire, defendant entered a plea of guilty to a lesser-included offense of murder without the firearm specification. Sentencing was deferred until a later date.

Several days later, but prior to the date set for sentencing, defendant filed a motion to withdraw his guilty plea. Attached to his motion is defendant's unsworn statement with defendant's reasons for wishing to withdraw his guilty plea. In a subsequent memorandum to support that motion, defendant contended that he relied upon defense counsel's advice concerning the minimum sentence defendant would have to serve prior to his being eligible for parole for the aggravated murder charge if found guilty. Feeling that twenty-three years (the erroneous figure given to defendant by his counsel) was too long, defendant opted to plead guilty to the lesser offense of murder. However, defendant contended that, had he known the actual minimum sentence he would have had to serve was only seventeen years prior to parole eligibility (for a conviction of aggravated murder with a firearm specification), he would not have pleaded guilty to the lesser offense.

In its decision denying defendant's motion, the trial court reasoned that "parole eligibilities are mere estimates and not guarantees." The trial court stated that defendant did not have the right to a withdrawal of his plea based upon these "mere estimates." Finding no constitutional due process violations that would mandate the withdrawal of defendant's guilty plea, the trial court denied defendant's motion. It is from this judgment which defendant appeals.

By his first assignment of error, defendant contends that he was denied effective assistance of counsel. Initially, we note that the state "questions" the propriety of defendant's trial counsel asserting this ineffective claim on appeal. Contrary to the state's contention that counsel is only arguing their own incompetence, the defense is merely admitting that a mistake was made by counsel and that defendant was prejudiced as a result. While there may be some factual situations in which it may not be appropriate for trial counsel to present an ineffective-assistance-of-counsel issue on appeal, we find no basis for finding any impropriety in this case.

Turning to the merits of defendant's contention, the test for determining whether defendant was denied effective assistance of counsel was established by the United State Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 687, as follows:

"*** First, the defendant must show that counsel's performance was deficient. *** Second, the defendant must show that the deficient performance prejudiced the defense. *** "

The court specifically applied the *Strickland* test to those cases involving guilty pleas in *Hill v. Lockhart* (1985), 474 U.S. 52, 58-59, which held:

"We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra,* and *McMann v. Richardson, supra.* The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the *defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty* and would have insisted on going to trial. \*\*\* " (Footnote omitted; emphasis added.)

Attorney competence means attorney performance of reasonably effective assistance. Defendant must show that the attorney's advice was not within a reasonable range of competence required of attorneys in criminal proceedings. *Strickland, supra.* Having established that counsel's advice fell below an objective standard of reasonableness, defendant must then show that, but for counsel's erroneous advice, he would not have pleaded guilty.

The court in *Hill, supra,* did not reach the issue of when erroneous advice of counsel might rise to the level of ineffective assistance of counsel. The court in a postsentence determination concluded that, because Hill did not demonstrate the requisite prejudice, he was not entitled to relief. In reaching this conclusion, the court stated at 60:

"\*\*\* Petitioner did not allege \*\*\* that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty."

In the instant case, defendant was informed by counsel that, if he was convicted of aggravated murder and the firearm specification, twenty-three years was the minimum amount of time he would have to serve prior to becoming eligible for parole. Defendant indicated in both his statement and testimony that this information was important to him. However, this information was inaccurate. As defense counsel admitted, had the relevant statutory and code provisions been examined more closely, they would have concluded that seventeen years was the minimum amount of tine defendant would have to serve.[1] This miscalculation of six years or more was clearly erroneous advice. Defense counsel had a duty to provide defendant with accurate advice, especially as to a matter defendant indicated was important to his decision of whether to plead guilty to the lesser offense. The calculation of defendant's minimum sentence did not involve guesswork or estimates, nor was it defense counsel's prediction of when defendant would be paroled. Defendant inquired as to the earliest possible date of parole and was substantially misinformed by his counsel. As such, and limited to the facts of this case, counsel's failure to review the applicable statutes and rules so as to give accurate advice constitutes inadequate representation whether or not it fell below an objective standard of reasonableness. Sentences have long been subject to reduction for "good behavior" in Ohio, and failure to take this factor into account in advising a client of the minimum time he would serve in prison when expressly asked for such advice constitutes deficient performance whether or not it meets the higher constitutional standard of the *Strickland* test.

Defendant contends that, had he been correctly informed of the minimum time he would have had to serve if convicted, he would not have pleaded guilty to murder but, rather, would have proceeded to trial. At the hearing for withdrawal of his plea, defendant testified that his counsel informed him several times that he would have to serve at least twenty-three years and that the thought scared him (Tr. 12). Furthermore, defendant specifically testified that he would have been more likely to proceed with trial for aggravated murder had he known that the minimum sentence would have been no more than seventeen years (Tr. 20) and that it was one of the major reasons for his plea (Tr.13). While defendant maintained throughout the proceedings that he did not want to plead guilty because he felt he was not guilty, it is apparent that the difference in the minimum sentences may well have been the overriding factor in defendant's decision to plead guilty to murder (Tr. 29).

The state contends that such "estimates" or "predictions" as to parole eligibility, if wrong, do not rise to the level of ineffective assistance of counsel and cites several cases in support of this position.

*State v. Johnson* (1988), 40 Ohio St. 3d 130, involves an interpretation of Crim. R. 11(C) (2) and of what the trial court is required to inform

defendant in order to ensure that defendant's plea is "voluntary and intelligent." The *Johnson* court held that failure of a trial court to tell defendant that sentences may be consecutive does not violate the Crim. R. 11(C)(2)(a) requirement that the defendant be advised of the maximum penalty which could result from a guilty plea. This is also true of the other cases relied upon by the state. These cases do not address the issue in this case:" what is the effect of counsel's patently erroneous advice as to minimum time to be served which defendant relies upon as the major factor in entering a plea of guilty?"

The state also relies upon *State v. Longo* (1982), 4 Ohio App. 3d 136, which rejected an ineffective-assistance-of-counsel claim. The court held that counsel's prediction of probation which proved incorrect did not rise to the level of ineffective assistance of counsel. In *Longo,* defense counsel was only estimating as to whether the trial court, within Its discretion, would grant probation if a guilty plea was entered, which could not be determined merely by reading the applicable statutes and rules as is the situation here. Furthermore, the *Longo* court ordered the guilty plea vacated for other reasons.

*Longo* is easily distinguishable from this case. Here defense counsel were not predicting or estimating any sentence for defendant, rather they were advising him on a question of law readily ascertainable from the applicable statutes and rules. This was not a prediction; seventeen years *is the minimum* amount of time defendant would serve if convicted of aggravated murder with a firearm specification under applicable Ohio law.

Having found that defendant relied upon erroneous information given to him by defense counsel, defendant was not given effective assistance of counsel. The erroneous information involved a definite defined minimum period of imprisonment, not an estimate or *prediction* of how long defendant would serve if convicted. Furthermore, the record indicates that defendant relied upon this erroneous information in making his decision to plead guilty. However, to constitute ineffective assistance of counseling the constitutional sense, the very high requirements of the Strickland-Hill test must be met. Although representation was not adequate, the prejudice here stems from the trial court's erroneous handling of the almost immediate motion to withdraw, not from the inadequate representation. Had the motion to withdraw not been so immediate, it is most doubtful that the inade-

quate representation would have been so egregious as to require granting of withdrawal of the guilty plea based upon post-sentence motion standards of "manifest injustice." Accordingly, we find the first assignment of error not to be well-taken.

Defendant's second and third assignments of error involve similar issues and will be considered together. By the third assignment of error, defendant contends it was an abuse of discretion for the trial court to deny his motion for withdrawal of his guilty plea. By the second assignment of error, defendant contends that the plea was not intelligent nor voluntary, and he should have been permitted to withdraw it.

While Crim. R. 32.1 sets forth a standard for allowing the withdrawal of a guilty plea *after* sentencing, it is silent as to what the standard is for a request made prior to sentencing. Ohio courts have recognized this distinction, holding that a more lenient standard should apply to motions made prior to sentencing. See *State v. Peterseim* (1980), 63 Ohio App. 2d 211, 213; and *Eastlake v. DeNiro* (1984), 21 Ohio App. 3d 102, 104.

*Peterseim* holds that motions to withdraw guilty pleas which are made prior to sentencing should be freely allowed. However, the decision to grant or deny such a motion remains in the sound discretion of the trial court. Therefore, keeping in mind that motions to withdraw guilty pleas made prior to sentencing should be treated liberally, unless the trial court abuses its discretion, the decision will not be disturbed on appeal.

In the present case, it appears from the trial court's decision that the standard used in reaching the determination that defendant not be permitted to withdraw his plea was that of a postsentence motion. The trial court stated, at 2, in its decision:

"Although defendant technically had not been sentenced before he requested to withdraw his plea, he knew he would receive a mandatory murder sentence of not less than 15 years to life. This was not a plea of guilty to an indefinite term of imprisonment. The sentence was clear:' 15 years to life imprisonment.'"

It appears from this language that the trial court treated defendant's motion as a postsentence motion to withdraw his guilty plea solely because defendant already knew what his sentence would be. However, this is essentially true in every nonprobation case where the sen-

tence is defined if the trial court complies with Crim. R. 11.

Regardless of defendant's knowledge of the sentence, he had *not* yet been sentenced. In so construing defendant's motion, the trial court used the incorrect standard because defendant clearly had not been sentenced at the time of the decision as evidenced by the setting of a sentencing date at the end of that decision. The trial court erred in treating this motion as a postsentence motion to withdraw of defendant's plea. This is especially true because of the quickness of defendant's change of mind. He entered the plea one afternoon and called his counsel the next morning seeking to have them withdraw his guilty plea. Although counsel waited over a weekend to file the motion, the delay is insignificant in light of the circumstances[2]

Defendant's unsworn statement and his testimony at the hearing indicate that, within twenty-four hours of pleading guilty, he regretted the decision which he had felt compelled to make. Defendant always felt, even after pleading, that he was not guilty of murder. Furthermore, in his unsworn statement, defendant stated his desire to withdraw the plea because "*** I was scared, begged (by my wife) and encouraged (by Mr. Kentner [defendant's attorney]). It was against my own principle." Apparently, defendant feels that the degree of his guilt was less than murder.

Additionally, as stated in the first assignment of error, an overriding factor in defendant's decision to plead guilty to the lesser offense was the misinformation regarding the minimum time he would have to serve if convicted of aggravated murder with the firearm specification. As we stated above, whether or not giving this erroneous information was ineffective assistance of counsel, it was the overriding influence upon defendant's decision. As the trial court was fully aware that defendant felt he had been pressured into the decision, that defendant regretted the decision and tried to correct it almost immediately after making it, and that defendant clearly relied upon erroneous information given to him by his counsel, the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea using the postsentence standard of manifest injustice.

The state contends that there is no distinction between presentencing and postsentencing motions to withdraw pleas as the "abuse-of-discretion" standard is used to review the trial court's decision in each. However, the state's contention is inaccurate. Crim. R. 32.1 provides

that a guilty plea may be withdrawn after sentencing only to correct "manifest injustice." However, as *Peterseim, supra,* holds, such limitation is imposed on presentence motions. Instead, *Peterseim* states that "a motion to withdraw filed before sentencing should be freely allowed" but remains a matter of exercise of discretion by the trial court.

The state also makes reference to the fact that defendant was aware of his possible sentence at the time the plea was made, and, therefore, he was somehow "testing the waters" of his potential punishment. The state contends that defendant's knowledge of his punishment changes the nature of the motion to a postsentence motion. However, defendant had yet to be sentenced, and there is no foundation for the contention he was "testing the waters" since there is no basis for concluding other than that his reluctance and eventual change of mind was predicated upon erroneous information as to the minimum time he would serve if he went to trial. Thus, "'the inconvenience to court and prosecution from a change of plea *** [was] slight as compared with the public interest in protecting the right of the accused to trial by jury.'" *Peterseim, supra,* at 213, quoting *Kadwell v. United States* (C.A. 9, 1963), 315 F. 2d 667, 670. Accordingly, it was an abuse of discretion to treat defendant's presentence motion as a postsentence motion, and defendant's third assignment of error is well-taken since the trial court did not exercise its discretion as to the presentence motion.

Defendant's second assignment of error is an interrelated portion of defendant's other two assignments of error and represents the reason why defendant should have been permitted to withdraw his guilty plea. Defendant contends that the plea was involuntarily and unintelligently based upon his reliance on the erroneous information given to defendant by his counsel.

The state's position centers around the trial court's full compliance with Crim. R. 11 and the fact that it is not necessary to inform defendant of the length of time he must serve prior to being eligible for parole. In support of its position, the state quotes the following statement from *State v. Davis* (December 9, 1982), Franklin App. No. 82AP-590, unreported (1982 Opinions 3670), at 3671:

"*** We find nothing within the rule which would require the court to advise defendant of the length of time he must serve before being eligible for parole. While a guilty plea must be

knowingly, intentionally and voluntarily made, and must include an understanding of the consequences thereof, this does not include an explanation of eligibility for parole. *** " (Citation omitted.)

The state's contention misses the mark. Defendant is not contending that Crim. R. 11 was not complied with, nor that the trial court failed to advise defendant of the length of time he would have to serve before being eligible for parole for pleading guilty to murder. Defendant's concern then, and his contention now, revolves around the minimum time he would have to serve if convicted of aggravated murder. It was this length of time which had a major impact on defendant's decision to plead guilty, *not* the minimum amount of time he would be required to serve if he pleaded guilty to the lesser charge of murder. The state's contention fails to make this distinction, even though the amount of difference between the two was a prime concern of defendant.

Furthermore, as discussed in the first assignment of error, it was the misinformation given to defendant by his attorneys that induced him to plead guilty, not anything the trial court told him prior to accepting his plea. Where a criminal defendant receives inaccurate information regarding the minimum sentence he would have to serve prior to being eligible for parole and is induced by that misinformation to decide to plead guilty to a lesser offense, that plea is arguably neither voluntary nor intelligent. A plea must be a voluntary and intelligent choice among the available, alternate choices of defendant. *North Carolina v. Alford* (1970), 400 U.S. 25, 31. If a defendant's decision to plead guilty is based solely upon faulty, inaccurate information, given to defendant by his attorney, it cannot be characterized as "intelligent." Accordingly, defendant's second assignment of error is well-taken to this extent.

For the foregoing reasons, defendant's second and third assignments of error are sustained, the first assignment of error is overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for determination consistent with this opinion and in accordance with law of defendant's presentence motion to withdraw his guilty plea under standards for presentence, rather than postsentence motions to withdraw guilty pleas.

*Judgment reversed and
cause remanded with instructions.*

BOWMAN and MARTIN, J.J., concur.

MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] Pursuant to R.C. 2929.03, defendant could have been sentenced to life imprisonment with the possibility of parole after serving twenty years if convicted of aggravated murder. However, defendant could have earned a six-year reduction for time off for good behavior pursuant to Ohio Adm. Code 5120-2-05(A) (thirty percent of twenty years). If defendant were convicted of the firearm specification pursuant to R.C. 2929.71, he would have to serve an additional three years "actual incarceration." Therefore, the minimum sentence defendant would have had to serve if convicted as charged was less than seventeen years since R.C. 2929.01(C) defining "actual incarceration" provides that the term of actual incarceration shall be "diminished as provided in Sections 2967.19, 2967.193, 5145.11 and 5145.12 of the Revised Code."
[2] Defendant indicated a willingness to plead guilty to voluntary manslaughter with a gun specification which would result in a minimum time served of only slightly less than the murder conviction, but the prosecutor refused.