[Cite as *State v. May*, 2021-Ohio-261.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  8-20-10

    v.

MARK D. MAY,                            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 04 0119

**Judgment Affirmed**

**Date of Decision:  February 1, 2021**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Alice Robinson-Bond* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Mark D. May ("May"), appeals the February 25, 2020 judgment of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from two separate incidents, one on February 20, 2018, and one on July 28, 2019, during which May acted violently toward his live-in girlfriend, L.J. On April 10, 2018, the Logan County Grand Jury indicted May on three counts relating to the February 20, 2018 incident: Count One of abduction in violation of R.C. 2905.02(A)(2), (C), a third-degree felony; Count Two of domestic violence in violation of R.C. 2919.25(A), (D)(3), a fourth-degree felony; and Count Three of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony. (Doc. No. 2). On August 9, 2019, May appeared for arraignment and pleaded not guilty to the counts of the indictment. (Doc. No. 17).

{¶3} On August 13, 2019, the Logan County Grand Jury issued a superseding indictment which related to both the February 20, 2018 and July 28, 2019 incidents, and contained nine counts: Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony; Count Two of abduction in violation of R.C. 2905.02(A)(2), (C), a third-degree felony; Count Three of domestic violence in violation of R.C. 2919.25(A), (D)(3), a fourth-degree felony; Count Four of attempted murder in violation of R.C. 2923.02(A), (E)(1), a first-

degree felony; Count Five of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony; Count Six of intimidation of an attorney, victim, or witness in a criminal case in violation of R.C. 2921.04(B)(1), (D), a third-degree felony; Count Seven of disrupting public services in violation of R.C. 2909.04(A)(3), (C), a fourth-degree felony; Count Eight of domestic violence in violation of R.C. 2919.25(A), (D)(3), a fourth-degree felony; and Count Nine of menacing by stalking in violation of R.C. 2903.211(A)(1), (B)(2)(e), a fourth-degree felony. (Doc. No. 22). On September 3, 2019, May appeared for arraignment and pleaded not guilty to the counts of the superseding indictment. (Doc. No. 35).

{¶4} A change-of-plea hearing was held on January 22, 2020. (Doc. No. 125). At the hearing, Count One of the superseding indictment was amended to charge May with aggravated assault in violation of R.C. 2903.12(A)(1), (B), a fourth-degree felony. (*Id.*). Under a negotiated plea agreement, May withdrew his pleas of not guilty and pleaded guilty to Count One (as amended) and Count Five of the superseding indictment. (*Id.*). In exchange, the State agreed to move for dismissal of the remaining counts of the superseding indictment. (*Id.*). The trial court accepted May's guilty pleas, found him guilty of Count One (as amended) and Count Five, and ordered a presentence investigation. (*Id.*). Furthermore, the remaining counts of the superseding indictment were dismissed. (*Id.*).

{¶5} On February 24, 2020, the trial court sentenced May to 18 months in prison on Count One and 8 years in prison on Count Five, to be served consecutively for an aggregate term of 114 months in prison. (Doc. No. 134). The trial court filed its judgment entry of sentence on February 25, 2020. (*Id.*).

{¶6} May filed a notice of appeal on March 23, 2020. (Doc. No. 144). He raises one assignment of error.

### Assignment of Error

**Appellant's guilty pleas were not voluntary or intelligent because the court failed to engage in an *Alford* inquiry to explore appellant's reasons for entering the guilty pleas after appellant implied that he was innocent during the plea colloquy.**

{¶7} In his assignment of error, May argues that his guilty pleas were not knowing, intelligent, or voluntary because the trial court failed to conduct an *Alford* plea inquiry before accepting his guilty pleas. Specifically, May contends that the trial court erred by accepting his guilty pleas after he told the trial court, "I agree [the victim and I] fought that day. * * * I'm not agreeing to those facts." May alleges that this statement rendered his plea an *Alford* plea and that, accordingly, the trial court erred when it accepted his plea without conducting an enhanced inquiry to determine that his plea was made knowingly, voluntarily, and intelligently.

{¶8} "All guilty pleas must be made knowingly, voluntarily, and intelligently." *State v. Moll*, 3d Dist. Defiance Nos. 4-14-17 and 4-14-18, 2015-Ohio-926, ¶ 9, citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "'"Failure on

-4-

any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."'" *State v. Montgomery*, 3d Dist. Putnam No. 12-13-11, 2014-Ohio-1789, ¶ 10, quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *Engle* at 527. Crim.R. 11(C)(2), which governs guilty pleas for felony-level offenses, provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury

trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶9} "An '*Alford* plea' is a specialized type of guilty plea when the defendant, although pleading guilty, continues to deny his or her guilt but enters the guilty plea because the defendant believes that the offered sentence is better than what the outcome of a trial is likely to be." *State v. Carey*, 3d Dist. Union No. 14-10-25, 2011-Ohio-1998, ¶ 6, citing *State v. Schmidt*, 3d Dist. Mercer No. 10-10-04, 2010-Ohio-4809, ¶ 13 and *State v. Piacella*, 27 Ohio St.2d 92 (1971). "The term '*Alford* plea' originated with the United States Supreme Court's decision in *North Carolina v. Alford* * * *, wherein the Supreme Court held that guilty pleas linked with claims of innocence may be accepted provided the 'defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.'" *Id.*, quoting *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160 (1970). "Although an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as a

guilty plea." *Id.*, citing *State v. Vogelsong*, 3d Dist. Hancock No. 5-06-60, 2007-Ohio-4935, ¶ 15.

**{¶10}** "All pleas, including an *Alford* plea, must meet the general requirement that the defendant knowingly, voluntarily, and intelligently waived his or her right to trial." *Id.* at ¶ 7, citing *State v. Padgett*, 67 Ohio App.3d 332, 337-338 (2d Dist.1990), construing Crim.R. 11(C). In cases involving *Alford* pleas, there is a "heightened duty upon the trial court to ensure that the defendant's rights are protected and that entering the plea is a rational decision on the part of the defendant." *Id.* Accordingly, "[w]here the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent." *Padgett* at 338. "This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty." *Id*. at 338-339.

**{¶11}** May contends that the trial court erred by failing to conduct an enhanced *Alford* plea inquiry after he implied his innocence during the change-of-

plea proceedings. However, although May now claims that he entered an *Alford* plea, the record does not support his assertion. At the change-of-plea hearing, the parties engaged in the following exchange with the trial court:

[Trial Court]: So it is your desire today to withdraw your plea of not guilty and enter a plea of guilty to felonious assault, a felony of the second degree, and aggravated assault, a felony of the fourth degree; is that correct, sir?

[May]: Yes, sir.

[Trial Court]: Do you understand that a plea of guilty is a complete admission of your guilt to the charges of felonious assault and aggravated assault and to the facts that support them?

[May]: Yes, sir.

* * *

[Trial Court]: The indictment indicates that these offenses occurred on two separate dates. The felonious assault occurred on July 28, 2019. Can you in your own words tell me what you

did on July 28, 2019 that leads you to plead guilty here today?

[May's Trial Counsel]: Your Honor, I think Mr. May would admit there's enough evidence to support a finding of felonious assault.

[Trial Court]: The plea agreement requires a factual basis from Mr. May and the prosecutor.

[May's Trial Counsel]: It's kind of tricky because * * * [May] is saying he doesn't really remember. Certainly if the prosecutor wants to read [the facts] into the record and admit to those facts.

[Trial Court]: Madam prosecutor, * * * read the facts into the record.

[The State]: Sure, Your Honor. As to July 29, 2019 [sic], * * * [in] Lakeview, Logan County, Ohio, the defendant was previously at large due to a prior incident. He hit and punched [L.J.], the victim, who is a family or household member in and on her head. He strangled her leaving visible marks upon her neck, he slammed her

head on a concrete floor. The serious physical harm is an element of felonious assault, including a broken collarbone and broken nose. * * *

[Trial Court]: Thank you[.] * * * Do you agree, Mr. May, that those events occurred?

[May]: Yes, to the events.

[Trial Court]: Thank you. With regard, then, to the aggravated assault which occurred on February 20, 2018, again, * * * would [the State] read the facts * * * detailing that day?

[The State]: Yes. On or about February 20, 2018, law enforcement was dispatched to * * * Lakeview, Logan County, Ohio * * * to a 911 call. * * * The defendant, Mark May, and the victim were family or household members. They were having an argument about whether or not [the victim] had been faithful to [May]. Doing [sic] that, he ripped off her clothes, smelled * * * her body to see if there

was the smell of another male upon her, and grabbed her by the throat. He strangled her until her body became limp and she became unconscious and thereby having a physical incapacity, Your Honor. She fell to the floor and * * * experienced serious physical harm. He then picked her up by the head, slammed her three times into the kitchen sink, again, causing serious physical harm. She attempted to leave. He did not allow her to do that. She tried to get away and a neighbor saw her and called law enforcement * * *.

[Trial Court]: Thank you * * *. Again, Mr. May, do you admit those are the facts underlying this * * * offense?

[May]: I agree we fought that day.

[Trial Court]: Thank you.

[May]: I'm not agreeing to those facts.

(Jan. 22, 2020 Tr. at 7-11).

-11-

{¶12} First, although May suggests in his brief that the statement, "I'm not agreeing to those facts," applies to both the felonious assault and aggravated assault charges, it is clear from the record that the statement applied exclusively to the aggravated assault charge, and there is no support for his claim that he entered an *Alford* plea to the charge of felonious assault. Accordingly, we need not further discuss the statement in the context of May's felonious assault charge.

{¶13} With respect to the aggravated assault charge, we find that, in the totality of the circumstances, May's single, tenuous statement that he did not "agree[] to those facts" does not support the assertion that May entered an *Alford* plea. At no time during the change-of-plea hearing did May state, or even suggest, that he was innocent of the charge of aggravated assault or that his conduct on February 20, 2018, was not sufficient to satisfy the elements of the offense. *See State v. Short*, 3d Dist. Logan No. 8-19-19, 2019-Ohio-3322, ¶ 13 ("Importantly, the record reveals that Short never made a protestation of his innocence in open court."); *State v. Scurlock*, 2d Dist. Clark No. 2002-CA-34, 2003-Ohio-1052, ¶ 80 (finding that the appellant did not enter an *Alford* plea where he "did not protest his innocence," but rather, "indicated he was not himself when he gave a statement to the police"). In fact, May specifically admitted that he fought with the victim that night. Moreover, May's statements that he fought with the victim that night but that he did not "agree[] to [the] facts" described by the State are consistent with his trial

counsel's statement that although May admitted that the record supported his guilt, he did not have a clear memory of the events. Moreover, in his brief in support, May characterizes his statement as merely "impl[ying] that he was innocent," rather than as a protestation of his innocence. (Appellant's Brief at 2, 5).

{¶14} Also, neither May nor his attorney ever represented his plea to be an *Alford* plea at the change-of-plea hearing or in his written plea agreement. *See State v. Swoveland*, 3d Dist. Van Wert No. 15-17-14, 2018-Ohio-2875, ¶ 19 ("[N]either Swoveland nor his trial counsel represented that his pleas were *Alford* pleas."), citing *Carey*, 2011-Ohio-1998, at ¶ 8, citing *State v. Pate*, 3d Dist. Hancock No. 5-96-12, 1996 WL 689196, *3 (Nov. 19, 1996) (stating that the requirements for an *Alford* plea were not met because, in part, "there was never any oral or written notice that such a plea was being attempted"). Further, the record does not indicate that the State was informed that May intended to make an *Alford* plea, or that it agreed to condition the plea bargain upon such a qualified plea. *See Carey* at ¶ 8 ("The State was never informed that Carey was intending to enter an *Alford* plea, nor did it agree to condition the plea bargain upon such [qualified terms]."). Rather, the trial court's unrefuted statement that "[t]he plea agreement requires a factual basis from [May] and the prosecutor" indicates that the agreement was predicated on May making a complete admission of guilt. (Jan. 22, 2020 Tr. at 8).

{¶15} Additionally, in his written plea agreement, May acknowledged that "I know that the Court must be satisfied that there is a factual basis for a plea of 'Guilty' * * * before my plea can or will be accepted." (Doc. No. 125, Ex. A). The document also contained the statement, "I know that the Court cannot and will not permit any one to plead guilty or no contest who maintains his or her innocence. Because I admit each of the operative facts of the charges against me, I respectfully request the court to accept my plea of 'guilty' to the * * * charges [of]: felonious assault [and] aggravated assault." (*Id.*). Importantly, the written plea agreement, which was signed and initialed by May and his trial counsel, was presented to the trial court *after* May made the statement that he did not "agree[] to those facts." (*Id.*); (Jan. 22, 2020 Tr. at 25). When the trial court reviewed the written plea agreement on the record, May affirmed that he signed the petition to plea voluntarily and had an opportunity to review and discuss the document with his counsel before signing. (Jan. 22, 2020 Tr. at 25).

{¶16} Thus, considering the totality of the circumstances, we cannot find that May's single comment that he did not "agree[] to those facts" is sufficient to characterize his plea as an *Alford* plea. *Carey* at ¶ 8 ("Carey's one comment, wherein she failed to take full responsibility for her participation in the offenses, was not sufficient to characterize her plea as an *Alford* plea."). Therefore, the trial court was not required to conduct an enhanced *Alford* plea inquiry before accepting

May's guilty pleas in order for his pleas to be made knowingly, intelligently, and voluntarily.

{¶17} Accordingly, May's assignment of error is overruled.

{¶18} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**